**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

MARC LESSER
JOHN MELLONE
SALVATORE BUZZETTA
ASHREF ABDALLAH
HANNY ABDULLAH
PHILIP ABENOJA
CHRISTOPHER ABREU
MATTHEW ABRUSCI
MIGUEL ABUD-PUELLO
ANTHONY ACEVEDO
CHRISTIAN ACEVEDO
GERALD ACEVEDO
HECTOR ACIEGO
ALEXANDER ACOSTA
EDWIN ACOSTA
MEL ACOSTA
DARLENE ACOSTA-PEREZ
ALBERT ADAMES
ANTHONY ADAMES
ANTHONY ADAMS
BALYNDA ADAMS
ASA ADAMS MCQUILKIN
TAMARA AFREH
ANDREW AGNEW
ANTHONY AGOSTINO
NICHOLAS AGOSTINO
MARK AGOSTO
PASCUAL AGOSTO,
and all others similarly situated,

Plaintiffs,

v.

CITY OF NEW YORK,

Defendant.

Civil Action No. _______________

**JURY TRIAL DEMANDED**

# COLLECTIVE ACTION COMPLAINT

Plaintiffs, by and through their counsel, the law firms of McGillivary Steele Elkin LLP and Spivak Lipton LLP, for their complaint against the City of New York ("New York City"), state as follows:

## INTRODUCTION

1. Plaintiffs are current and former employees of the Defendant, City of New York, who work or have worked in the position of Sanitation Worker for the Department of Sanitation ("DSNY"). Plaintiffs bring this action for back pay, liquidated damages, reasonable attorneys' fees and costs, and other relief pursuant to 29 U.S.C. § 207 and 29 U.S.C. § 216(b) to remedy the Defendant's willful and unlawful violations of federal law complained of herein.

2. Plaintiffs bring this action against Defendant as a collective action in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") because of Defendant's unlawful deprivation of Plaintiffs' right to overtime compensation under the FLSA. The Plaintiffs are similarly situated to each other because they have been subject to the same policies and/or practices that violate the FLSA whereby Defendant has suffered or permitted Plaintiffs to perform uncompensated overtime work before their paid shifts, and whereby Defendant has paid Plaintiffs and all those similarly situated various payments such as longevity pay, service pay, night shift, truck, and route differential payments on top of Plaintiffs' regular pay but has failed to include these additional payments in the calculation of the regular rate of pay on which Plaintiffs' overtime rate is based.

## PARTIES

3. Plaintiffs have each given their written consent to be Party-Plaintiffs in this action pursuant to 29 U.S.C. § 216(b). Their written consent forms are set forth in Exhibit A.

4. Each of the Plaintiffs in this action while employed by Defendant has been an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

5. Defendant New York City is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). The City of New York has a principal office and place of business located at Broadway and Park Row, New York, NY, 10007, and may be served with process by serving the Office of Corporation Counsel, 100 Church Street, New York, NY 10007.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

**FACTS**

8. Plaintiffs are, and have been at all times material, employed by Defendant in the Department of Sanitation in the position of Sanitation Worker at various locations across the City. Plaintiffs' principal job duties, like the principal job duties of all others similarly situated, include, but are not limited to: collecting garbage, recycling, compost, and other refuse (collectively, "garbage") from residential and public receptacles within the City; collecting loose garbage in and around their routes; transporting garbage to dumps or other disposal sites; dumping garbage at dumps or other disposal sites; loading garbage into containers or otherwise preparing it for transport to distant dumps or other disposal sites; street sweeping; snow plowing; operating various garbage trucks and their associated equipment, such as compactors; operating equipment such as

street sweepers, loaders, and snow plows; and using hand tools such as shovels and brooms to collect loose garbage.

9. For example, within the previous three years, Plaintiff Marc Lesser has been employed by Defendant as a Sanitation Worker and has been assigned to the Brooklyn North 1 Garage, located at 161 Varick Avenue; Plaintiff John Mellone has been employed by Defendant as a Sanitation Worker and has been assigned to the Brooklyn North 4 Garage, also located at 161 Varick Avenue; and Plaintiff Salvatore Buzzetta has been employed by Defendant as a Sanitation Worker and has been assigned to the Brooklyn North 2 Garage, located at 465 Hamilton Avenue.

10. While working as Sanitation Workers, Plaintiffs and all others similarly situated routinely work over 40 hours a week. However, the City fails to compensate Plaintiffs for all hours worked over 40 in a workweek at a rate of one and one-half times their regular rates of pay.

11. The regular schedule for Plaintiffs and all others similarly situated consists of five, eight-hour shifts each week, for a total of 40 scheduled hours. However, Defendant has suffered or permitted Plaintiffs and all others similarly situated to work approximately 15 minutes in excess of their scheduled shift hours without pay. Defendant does not compensate Plaintiffs for this additional work time outside of Plaintiffs' scheduled shifts. During this pre-shift unpaid time, Plaintiffs perform work integral to their jobs including collecting and changing into required protective gear, locating and transporting tools and equipment for use on their trucks.

12. Instead, Defendant only compensates Plaintiffs and all others similarly situated for time in excess of the scheduled shift that it deems to be "pre-approved." As such, Defendant regularly fails to compensate Plaintiffs and all others similarly situated at a rate of one and one-half times their regular rate of pay for at least one hour and 15 minutes of work each week that they work all five of their scheduled shifts.

13. Additionally, under Agency-wide policy and collective bargaining agreements, Plaintiffs receive certain premium payments on top of their base pay. These payments include longevity pay, service pay, and differential payments related to night work, routes driven, and vehicles operated.

14. When Defendant *does* compensate Plaintiffs and all others similarly situated for pre-approved overtime (which does not include work described above in Paragraph 11 and below in Paragraph 30), Defendant systemically fails to pay them for this overtime work at the correct rate because it fails to include, among other things, their longevity pay, service pay, and differential payments in the regular rate of pay on which their overtime rate is based.

***Defendant's Fair Labor Standards Act Violations Are Willful***

15. Sanitation Workers' supervisors observe them arrive before their scheduled shift start times, sign in on sheets called "DS-57s," and begin to perform work tasks including changing into required protective gear, and locating and transporting tools and equipment for use on their trucks.

16. While the DS-57s could show actual arrival times, they generally do not. This is because Sanitation Workers are instructed to record their scheduled shift start times on the DS-57s rather than their actual pre-shift arrival times.

17. Defendant fails to pay the Sanitation Workers on a minute-by-minute basis for this pre-shift work time, despite being on notice, through the supervisors' observations, of the precise amount of unpaid overtime that Plaintiffs, and all others similarly situated, work each day. Instead, Defendant pays Plaintiffs and all others similarly situated based only on their scheduled shift hours and any pre-approved overtime hours.

18. Defendant utilizes a program called "CityTime" to administer and calculate Plaintiffs' pay and the pay of all others similarly situated. However, unlike most City workers, Plaintiffs do not punch in or out of CityTime. Instead, Defendant only pays Sanitation Workers for their scheduled shifts (unless they are late, in which case they are docked pay).

19. Defendant is aware that its "pay-to-schedule" system fails to capture Plaintiffs' actual working hours and fails to pay employees for compensable work time. For example, in *Perry v. City of New York,* the Second Circuit affirmed a jury verdict in favor of New York City EMTs and Paramedics resulting in a final judgment of over $19 million for FLSA violations, including failing to pay for pre-shift and post-shift time recorded on CityTime, and a finding of willfulness. 78 F.4th 502 (2d Cir. 2023). Similarly, in the consolidated cases of *Foster* and *De La Cruz v. City of New York*, the trial court granted summary judgment for plaintiffs working at two other City agencies—the Administration for Children's Services and the Human Resources Administration, which both use the same CityTime software—on FLSA claims that the City had failed to compensate them for time worked before and after their scheduled shifts. *Foster,* 1:14-cv-04142, *De La Cruz,* 1:14-cv-09220, 2017 WL 11591568, at *4, *23-25 (S.D.N.Y. Sept. 30, 2017).

20. Defendant has repeatedly been held liable for failing to pay for pre- and post-shift work; it is well aware of its obligation to pay employees for overtime work, which is suffered or permitted, even if employees do not make a request for overtime compensation for that work or if that time is not pre-approved by Plaintiffs' superiors. *See, e.g.*, *Lawtone-Bowles v. City of New York*, 1:16-cv-04240, 2020 WL 2833366, at *4 (S.D.N.Y. June 1, 2020) ("Defendant[] . . . argu[es] . . . that Plaintiffs failed to report the unpaid overtime . . . . The City has made this argument repeatedly in FLSA overtime litigation in this District and it has been unanimously

rejected."); *Foster/De La Cruz*, 2017 WL 11591568, at *4, *23-25 (in consolidated cases, granting summary judgment for two sets of plaintiffs—employees of the City's Administration for Children's Services and Human Resources Administration, respectively—on FLSA claims that they worked uncompensated overtime of which their managers were aware, despite failure to seek pre-approval or otherwise request compensation); *Perez v. City of New York*, 1:12-cv-04914, 2017 WL 4326105, at *12-13 (S.D.N.Y. Sept. 27, 2017) (denying summary judgment to City and rejecting City's defense that it should not be liable for FLSA overtime where plaintiffs failed to "report" overtime on the CityTime system where "ample record evidence" demonstrated that the City knew or had reason to know plaintiffs were working unreported overtime hours); *Worley v. City of New York*, 1:17-cv-04337, 2020 WL 730326 (S.D.N.Y. Feb. 12, 2020) (granting summary judgment to plaintiffs for uncompensated pre-shift, post-shift, and meal period work about which the City was aware).

21. In fact, the former New York City Corporation Counsel has admitted, under oath, that it is an employer's responsibility to ensure that employees get paid for work about which the employer is aware. *See Perry v. City of New York*, No. 1:13-cv-1015 (S.D.N.Y.), Dkt. 181 (Trial Transcript of October 16, 2019) at 969-70 ("[I]t would be . . . the supervisor's responsibility to ensure that the employees get paid for work about which the employer is aware; correct?" "Correct."). *See also Foster/De La Cruz*, 2017 WL 11591568, at *9 ("[T]he City's chief employment lawyer . . . concedes that where a manager observes an employee working [outside their shift], the manager has an obligation to make sure that employee is compensated for that time, even if the employee did not obtain pre-approval[.]") (citations omitted).

22. Despite numerous decisions finding the City liable for failing to pay for overtime work, the City has failed to take any steps with respect to the CityTime system or its own processes

and procedures to properly capture and compensate its workers for compensable time that could be logged and paid as work time.

23. Defendant has failed to conduct an audit or otherwise sufficiently investigate any time worked prior to the shift start times or examine its practice of instructing Sanitation Workers to record only the scheduled start of the shift and not the actual time of arrival on the DS-57s.

24. At all times relevant, Defendant has failed and continues to fail to compensate Plaintiffs and those similarly situated for overtime work that is performed with their supervisors' knowledge and that could have been easily recorded on the DS-57s but was not pursuant to Defendant's instructions. Defendant could have also required the Sanitation Workers to punch into CityTime upon beginning work as most City workers do. Had Defendant done so, there would be a record of the time the Sanitation Workers begin performing compensable work prior to their shifts.

25. The City has also previously been held liable for failure to properly calculate employees' regular rates of pay by failing to include differential payments, such as night shift differentials and longevity pay, in the rate at which overtime is paid to employees. *See, e.g.*, *Foster/De La Cruz*, 2017 WL 11591568, at *32-35; *Lawtone-Bowles v. City of N.Y.*, 2020 WL 2833366, at *5; *Lynch v. City of New York*, 291 F. Supp. 3d 537, 551-52 (S.D.N.Y. 2018). Despite these decisions, the City continues to fail to include such differential payments in Plaintiffs' regular rates of pay.

26. Defendant has failed to seek advice from the U.S. Department of Labor regarding whether its pay policies and practices comply with the FLSA.

27. Defendant has not disciplined any Sanitation Worker for performing unpaid overtime before their scheduled shift hours.

28. Plaintiffs' timekeeping and payroll data is in Defendant's exclusive possession and is not readily available to Plaintiffs. Plaintiffs do not personally record their work time on CityTime. Plaintiffs' CityTime records and payroll data are "maintained across various [agency] branches, not available for download or electronic transfer, not text-searchable, not maintained for more than two years, and require[] a separate search for each pay period." *Murray v. City of New York*, No. 1:16-cv-08072, Dkt. 66 (S.D.N.Y. Oct. 18, 2017) at 3.

***Uncompensated Work Performed by Plaintiffs***

29. While working as Sanitation Workers for DSNY, Plaintiffs and all others similarly situated regularly work over 40 hours a week. While Sanitation Workers are regularly scheduled to work five, eight-hour shifts (totaling a minimum of 40 hours of scheduled work per week), Defendant has nevertheless suffered or permitted them to regularly work approximately 15 minutes in excess of their scheduled shift hours on a daily basis.

30. Plaintiffs and all others similarly situated perform their primary job duties and tasks that are integral and indispensable to those duties, which include, but are not limited to, those duties enumerated in Paragraph 8, prior to their scheduled shifts. For example, prior to their scheduled shifts, Sanitation Workers engage in necessary, integral, and indispensable tasks, such as: collecting tools that they are required to carry on their trucks, including shovels and brooms, out of a storage locker in the garage and loading them onto their assigned vehicles; collecting and changing into required protective clothing; receiving their route assignments for the day from their supervisors; identifying which identical white truck out of as many as 100 on the lot that they are assigned to for the day; ensuring the safety and operability of their truck or other equipment by conducting a required pre-trip inspection of, among other things, the truck's brakes and levels of fuel, oil, hydraulic fluid, and diesel exhaust fluid (DEF); and, in cold weather, starting the trucks' diesel engines with sufficient time for them to warm up before being driven.

31. Before they leave the garage to collect garbage on their assigned routes, Plaintiffs and all others similarly situated must receive instructions from their supervisors including but not limited to their route assignments for the day, information regarding the weather or other conditions that might affect their routes, and other necessary information. They also must receive route cards from their supervisors that permit them to operate their commercial trucks in residential areas and that contain necessary information about their routes and the safety inspections they must perform on their assigned trucks.

32. Sanitation Workers' routes are not finalized until 10 minutes before their shifts. Until this time, Sanitation Workers are able to exchange routes or fill vacant spots on routes. Different routes may involve operating different equipment, and thus may entitle Sanitation Workers to additional pay. Sanitation Workers must be present at the garage, however, to participate in this process for finalizing routes.

33. Sanitation Workers also must change into required, protective equipment prior to their shifts. This equipment includes nonslip and chemical resistant work boots; thick, green work pants; heavy, cut and tear-resistant work gloves; and a high-visibility yellow shirt with reflective striping. This protective equipment allows Sanitation Workers to handle human and animal waste, chemicals, and other dangerous or dirty components of the City's garbage, safely and effectively while working within dump sites, as well as on active roads and around heavy equipment and machinery.

34. The widespread practice of the Sanitation Workers is to change into their protective gear in a locker room at their assigned garage. They are assigned multiple, specific lockers where they can keep their dirty and clean protective equipment. Plaintiffs, and all others similarly situated, lack a meaningful opportunity to change at home because their equipment becomes

heavily soiled as a condition of Sanitation Workers' job duties and often cannot be stored, or laundered at their homes.

35. Sanitation Workers are expected to leave the garage premises and be out in the field, in their assigned trucks, immediately after the start of their scheduled shifts. Sanitation Workers can be disciplined if they fail to be out in the field on time. They cannot meet this target without beginning to work approximately 15 minutes before the start of their scheduled shifts.

36. As such, each week and as part of their regular schedules, Sanitation Workers, including Plaintiffs Lesser, Mellone, and Buzzetta, perform approximately 1 hour and 15 minutes of uncompensated work on top of their regularly scheduled 40 hours each week, including, for example, during the week of July 26 through August 1, 2026, for Plaintiff Buzzetta. Despite Defendant's awareness that Plaintiffs perform work tasks prior to their shift start time, it fails to compensate them for these tasks. In fact, Plaintiff Buzzetta has not been paid overtime for the additional 1 hour and 15 minutes he worked during the week of July 26 through August 1, 2026.

37. The amount of uncompensated work hours for which Plaintiffs and those similarly situated have not been paid can be identified through the Defendant's timekeeping system and through other work and pay records.

***Rate at Which Overtime is Paid to Plaintiffs and All Others Similarly Situated***

38. Plaintiffs and all others similarly situated routinely work additional shifts and pre-approved overtime for which they are paid, in addition to the daily unpaid overtime described above.

39. While working as Sanitation Workers during the last three years, Plaintiffs and all others similarly situated have received certain payments in addition to their basic pay. These payments include, but are not limited to: a night shift differential of 10%; longevity pay; a service

differential; a "two worker truck differential"; and a "route extension differential." These payments are made pursuant to Agency-wide policy, and/or collective bargaining agreements, and thus they are paid to Plaintiffs and all others similarly situated.

40. However, on occasions when Plaintiffs and those similarly situated are paid overtime compensation, Defendant wrongly fails to include these additional differential payments in the regular rate of pay used to calculate the overtime rate payable to Plaintiffs and those similarly situated.

41. Failure to include these differential payments in Plaintiffs' regular rates of pay means that when Plaintiffs receive paid overtime for working in excess of 40 hours in a week, they are paid at a rate for those overtime hours that is below the rate mandated by the FLSA.

42. For example, during the past three years, Plaintiffs Lesser, Mellone, and Buzzetta have, as part of their regularly scheduled shifts, earned such differential payments while working as Sanitation Workers during weeks in which they also were paid overtime compensation. including during the week of January 25 through January 31, 2026, for Plaintiff Mellone. However, on these occasions and others, Defendant did not include these differential payments in the calculation of his overtime rates during those workweeks.

43. Sanitation Workers employed by Defendant who receive differential payments pursuant to Agency-wide policy and/or collective bargaining agreements, including Plaintiffs, are similarly situated and routinely work more than 40 hours in a workweek but are denied proper compensation for hours worked in excess of 40 hours because Defendant continues to fail to include these payments in the regular rate of pay upon which the Plaintiffs' overtime rate is based. The precise amount of improperly paid overtime received by each Sanitation Worker can be identified through the Defendant's timekeeping system and through other work and pay records.

## ***Collective Action Allegations***

44. All Sanitation Workers employed by Defendant are similarly situated and regularly scheduled to work at least than 40 hours in a workweek but are denied compensation for approximately 1 hour and 15 minutes per week of work that they perform before their shifts due to Defendant's policy of only paying for "pre-approved" overtime, and its adoption of a "pay-to-schedule" policy which does not compensate for work performed outside of the scheduled eight hours per shift.

45. Sanitation Workers perform, as part of their regular schedules, uncompensated, pre-shift work that is uniform and inherent in their positions as Sanitation Workers, including, but not limited to, the duties enumerated in Paragraphs 8 and 29-34.

46. Additionally, the time pressures that make it necessary for Sanitation Workers to begin working approximately 15 minutes before their shifts are caused by uniform, Agency-wide policies or practices relating to, *inter alia*, the information and documentation that must be provided to Sanitation Workers before their shifts, collecting and changing into protective equipment, gathering tools, and the requirement that Sanitation Workers must leave the garage promptly in order to avoid discipline.

47. Defendant uniformly fails to compensate Plaintiffs and all other similarly situated Sanitation Workers for their pre-shift work.

48. Plaintiffs perform this additional work, in part, due to Defendant's common policies and plans relating to, *inter alia*, collecting required equipment, donning required protective gear, and the time requirements for when trucks and equipment must be in the field.

49. As a condition of Citywide policy and/or collective bargaining agreements, Sanitation Workes are all eligible to receive longevity pay, night shift differential, service

differential, “two worker truck” differential, “route extension” differential and other differential payments when they meet the conditions authorizing such pay.

50. When Sanitation Workers receive such differential payments, Defendant universally fails to properly include their value in the regular rate of pay used to determine the Sanitation Workers’ overtime rate.

51. Defendant fails to include such differential payments in the calculation of the regular rate of pay of Plaintiffs and all others similarly situated pursuant to a systematic, Agency-wide practice.

52. Sanitation Workers are all subject to Defendant’s same practice and policy of using the CityTime timekeeping system and a City-wide payroll system to administer and calculate their pay.

53. All Sanitation Workers are similarly situated, and Plaintiffs will request that this Court certify a collective composed of: All employees of Defendant who have worked in the position of Sanitation Worker in the DSNY since August 26, 2023.

## COUNT I

### FAILURE TO PAY OVERTIME FOR ALL HOURS PLAINTIFFS ARE SUFFERED OR PERMITTED TO WORK IN VIOLATION OF SECTION 7(a) OF THE FLSA, 29 U.S.C. § 207(a)

54. Plaintiffs hereby incorporate by reference all preceding Paragraphs in their entirety and restate them herein.

55. At all times material herein, during those workweeks in which Plaintiffs and all others similarly situated have worked hours in excess of 40 hours a week, they have performed work activities, including but not limited to performing tasks enumerated in Paragraphs 8 and 29-34 without compensation before their scheduled shifts. This additional, daily work has caused

Plaintiffs and all others similarly situated to work in excess of 40 hours in a week without proper overtime compensation in violation of the FLSA. Accordingly, as a result of these pay practices, Defendant has failed to provide Plaintiffs and all others similarly situated with the rights and protections provided under section 7(a) of the FLSA, 29 U.S.C. § 207(a).

56. Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein. In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all hours employees are suffered or permitted to work in excess of 40 hours per week. Defendant has failed to comply with the overtime pay requirements of the FLSA by failing to compensate Plaintiffs and all others similarly situated for work that they have been suffered or permitted to work before the official start time of their regularly scheduled shifts.

57. As a result of Defendant's willful and purposeful violations of the FLSA, there has become due and owing to the Plaintiffs an amount that has not yet been precisely determined.[1] The employment and work records for the Plaintiffs are in the exclusive possession, custody and control of the Defendant and its public agencies and the Plaintiffs are unable to state at this time the exact amount owing to them. From these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll

[1] Any Plaintiff who was also a Plaintiff in *Vitale v. City of New York*, Case No. 1:25-cv-01129 (S.D.N.Y.) seeks backpay and liquidated damages on Count I commencing December 16, 2025. Any Plaintiff who was a Plaintiff in *Richards v. City of New York*, 1:23-cv-10220 (S.D.N.Y.), but who was not in *Vitale*, seeks backpay and liquidated damages on Count I commencing January 1, 2025. Any Plaintiff who did not participate in either *Vitale* or *Richards* seeks backpay and liquidated damages on Count I three years back from the date that the Plaintiff's consent to sue form is filed in Court, for Defendant's willful violation of the FLSA.

and other employment records with respect to the Plaintiffs from which the amount of Defendant's liability can be ascertained.

58. Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their back pay damages for the Defendant's failure to pay overtime compensation.

59. Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## **COUNT II**

## **FAILURE TO PROPERLY CALCULATE THE REGULAR RATE OF PAY IN VIOLATION OF SECTION 7(a) OF THE FLSA, 29 U.S.C. § 207(a)**

60. Plaintiffs hereby incorporate by reference all preceding Paragraphs in their entirety and restate them herein.

61. Section 207(e) of the FLSA, 29 U.S.C. § 207(e), as well as the regulations of the U.S. Department of Labor, 29 CFR Part 778, *et seq*., require that all forms of remuneration be included in the rate at which FLSA overtime is paid, with some limited exceptions not applicable here. Defendant has failed to include certain differential payments, including night shift differential pay, longevity pay, service differential pay, "two worker truck" differential pay, and "route extension" differential pay and other forms of differential pay in Plaintiffs' regular rates of pay for purposes of computing overtime pay entitlements of Plaintiffs and all others similarly situated, resulting in Defendant paying Plaintiffs and all others similarly situated for overtime work at a rate that is below the rate mandated by the FLSA. Defendant's failure to include these forms of additional compensation in Plaintiffs' regular rate of pay violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.207(b).

62. As a result of the Defendant's systemic, continuing, willful, and purposeful violations of the FLSA, there has become due and owing to the Plaintiffs and all others similarly situated an amount that has not yet been precisely determined.[2] The employment and work records for the Plaintiffs and all others similarly situated reflecting such ongoing violations are in the exclusive possession, custody and control of Defendant and its public agencies, and Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to Plaintiffs and all others similarly situated from which the amount of Defendant's liability can be ascertained.

63. Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their back pay damages for the Defendant's failure to pay overtime compensation.

64. Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

**DEMAND FOR A JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand that their claims be tried before a jury.

[2] The City was previously sued by DSNY Sanitation Workers for the same violations of the FLSA that are alleged in the present case. Any Plaintiff who was also a Plaintiff in *Vitale v. City of New York*, Case No. 1:25-cv-01129 (S.D.N.Y.) seeks backpay and liquidated damages on Count II commencing December 16, 2025. Any Plaintiff who was a Plaintiff in *Richards v. City of New York*, 1:23-cv-10220 (S.D.N.Y.), but was not a Plaintiff in *Vitale*, seeks backpay and liquidated damages on Count II commencing January 1, 2025. Any Plaintiff who did not participate in either *Vitale* or *Richards* seeks backpay and liquidated damages on Count II three years back from the date that the Plaintiff's consent to sue form is filed in Court for Defendant's willful violation of the FLSA.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court:

(a) Order a complete and accurate accounting of all the compensation to which the Plaintiffs and those similarly situated are entitled;

(b) Certify this case as a collective action;

(c) Award Plaintiffs and all others similarly situated monetary liquidated damages equal to their unpaid compensation;

(d) Award Plaintiffs and all others similarly situated interest on their unpaid compensation;

(e) Award Plaintiffs and all others similarly situated their reasonable attorneys' fees to be paid by the Defendant, and the costs and disbursements of this action; and

(f) Grant such other relief as may be just and proper.

Respectfully submitted,

*s/ Sarah M. Block*
Molly A. Elkin (*Pro Hac Vice Forthcoming)*
Sarah M. Block
Patrick Miller-Bartley (*Pro Hac Vice Forthcoming)*
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
mae@mselaborlaw.com
smb@mselaborlaw.com
pmb@mselaborlaw.com

*s/ Hope Pordy*
Hope Pordy
Elizabeth Sprotzer
SPIVAK LIPTON LLP
1040 Avenue of the Americas
20th Floor
New York, NY 10018
Phone: (212) 765-2100
hpordy@spivaklipton.com

esprotzer@spivklipton.com

*Counsel for Plaintiffs*